(20 Misc. Rep. 265.)

## In re HOYSRADT et al.

(Supreme Court, Special Term, Columbia County.　May, 1897.)

1. TRUSTS—POWERS OF TRUSTEE.

A trustee has no authority to lease the trust property, where the only authority conferred on the trustee by the will creating the trust is to receive the rents and profits, and "within a reasonable and convenient time after" testator's decease to sell the property, and invest the proceeds for the benefit of the cestuis que trustent.

2. SAME—REMOVAL OF TRUSTEE—NEGLECT OF DUTY.

A will creating a trust directed the trustee to sell the real estate "within a reasonable and convenient time after" testator's death, invest the proceeds, pay the income to certain persons for life, and at their death to pay over the fund to certain other persons. The trustee neglected to sell a part of the real estate, consisting of an unproductive tract, and, after the death of the last life beneficiary 24 years after the trustee qualified and 17 years after he had been ordered by the court to sell the land, he leased it for the purpose of cutting timber and taking oil therefrom. *Held*, that for such conduct the trustee should be removed, though he acted in good faith, and though his management greatly increased the value of the property, since the persons interested in the estate were entitled to have the leases set aside, and actions for that purpose could be brought to better advantage by a new trustee than by the one who made the leases.

Petition by Catharine L. Hoysradt and others for the removal of Charles W. Macy from the office of trustee under the will of Abner Hammond, deceased.

Samuel B. Coffin, for petitioners.

C. P. Collier, for Susan B. Hill.

L. F. Longley, for Susan Pellet.

John Cadman, for Elizabeth F. Terry.

A. F. B. Chace, for Maritta Farley.

C. B. Benson, for Sarah A. Hammond, administratrix.

EDWARDS, J.　Abner Hammond died on the 12th day of May, 1849, a resident of Hudson, N. Y., leaving a will, whereby, after making a disposition of a portion of his property, he gave to his executors the residue of his estate, in trust to receive the rents, issues, profits, and income of the real estate, and "within a reasonable and convenient time after" his decease to sell and dispose of the same, and, "as soon as they conveniently can," to sell and dispose of the personal estate, and collect all moneys due, and with the proceeds to pay his debts and funeral expenses, and invest the sum of $7,000 in good, productive stocks, or in bonds and mortgages upon unincumbered real estate, and pay the annual interest of same to his wife during her life, and upon her decease to pay one-fourth of said annual interest to each of his daughters, Sally Maria, Maritta, Bathsheba, and Caroline, during her life, and upon the death of each of said four daughters to pay the one-fourth part of the said $7,000 to her children; and also to invest the sum of $588 in good productive stock or bond and mortgage, and pay the annual interest to his daughter Polly during her life, and upon her decease to pay the said $588 to her children; and upon the further trust to invest all the residue of the moneys arising from the estate de-

vised to them in trust in good, productive stocks, or in bonds and mortgages on unincumbered real estate, and pay the one-fourth of the income therefrom annually to each of his said four daughters during her life, and after her death to pay one-fourth of the principal of said residue to her children. On July 18, 1849, the said will was admitted to probate by the surrogate of Columbia county, and letters testamentary thereon were issued to Charles McArthur, the only one of the executors named in the will who accepted such appointment. Subsequently thereto three trustees of the said estate were successively appointed, and served as such until about the 15th day of March, 1873, when, by the order of this court, Charles W. Macy was appointed sole trustee, with the same power and authority which were conferred by the will upon the executors named therein; and the said Macy has ever since continued to act as such trustee.

A part of the property devised to the executors in trust and which came into the hands of the present trustee was a tract of land of about 1,000 acres, situate in Forest county, Pa. In an action brought by this trustee for an accounting, a decree was made on June 5, 1880, directing a distribution of the trust estate remaining in his hands, except the said tract of land in Pennsylvania, which remained undisposed of, and except that the trustee was authorized to retain the sum of $1,000 for the purpose of paying the taxes on said land, and the further expenses of the trust. This tract of land was wholly unproductive, was of the value of about $3,000, and the annual taxes thereon were about $180. The decree contained the following provision:

"And it appearing that the real estate situated in Forest county, Pennsylvania, now held by the plaintiff as trustee as aforesaid, is wholly unproductive; that the annual taxes thereon are about one hundred and eighty dollars; that it is expedient and best for the interests of all persons entitled to the proceeds of the sale thereof that said real estate be sold as soon as a purchaser can be found of same at a fair price therefor. And it is therefore hereby ordered and directed that the said trustee sell the same at public or private sale, and at such price as he can obtain for same as he shall deem, according to his own judgment and discretion, for the best interests of all persons concerned."

On October 16, 1885, Caroline McArthur, the last of the four daughters of the testator who were entitled to the income of said trust estate, died, and the children of the said four daughters thereupon became, in accordance with the provisions of the will, entitled to the principal. A few days thereafter the trustee, with knowledge of the death of said Caroline McArthur, granted to one A. S. Allshouse the south half of said tract of land, "to have and to hold for the purpose of drilling, boring, and mining for oil, gas, and other minerals for the period of twelve years (excepting coal) from the date hereof [thereof], or as long as oil, gas, or other minerals are found in paying quantities upon the premises." The assignee of Allshouse is in the enjoyment of the rights granted, and the trustee has received therefor about $150 per annum. The trustee, subsequent to said decree, has also sold certain timber growing on said tract of land for the sum of $2,500. On May 2, 1895, the trustee granted to the Oil City Fuel-Supply Company "all the oil and

gas in and under" the north half of said tract of land, "together with the right to enter thereon at all times for the purpose of drilling and operating for oil, gas, or water, and to erect and maintain all buildings and structures and lay all pipes necessary for the production and transportation of oil, gas, or water taken from said premises," for the term of 20 years, for the sum of $1,800. It is claimed by the petitioners that the sale of the timber, and the leases or contracts made by the trustee with Allshouse and with the Oil City Fuel-Supply Company, were in excess of the powers conferred upon the trustee, and constitute a breach of trust for which, together with his neglect to sell the real estate as directed by the testator and by the decree of the court, he should be removed. No want of capacity or integrity upon the part of the trustee is alleged, nor could such claim be maintained. That he has endeavored to discharge his duties with fidelity, and for the best interests of the trust estate, cannot be controverted. Nor do I think that the trustee could be criticised for any want of prudence and judgment in the acts complained of if he were free from any limitations in the management of the trust estate. That these acts have rendered the property more valuable than was anticipated by the beneficiaries is quite evident. But in the execution of his trust the trustee was limited to the performance of the duty imposed upon him. His power of disposition of the trust estate was such only as was expressly conferred by the instrument creating the trust, or as was necessary to its due execution. His manifest duty was to execute the trust in accordance with the intention and direction of the testator. The clearly expressed intention and direction of the testator was that the trustee should, within a reasonable time, convert the real estate into money, and invest the same in certain securities named by him, for the purpose of producing an annual income, payable to his wife and to his daughters during their lives, and after their death the principal to be paid to their children. His direction to sell and dispose of his real estate "within a reasonable and convenient time after his decease" was imperative. The only discretion left to the trustee in respect to the sale of the real estate was as to the manner of the sale, whether "public or private," the price, and the terms of credit. It was an explicit direction to sell within a reasonable time, and to invest the proceeds in securities productive of an annual income. The order of the court, made in 1880, for the sale of the real estate, was in accordance with the provisions of the will.

Notwithstanding nearly 50 years have elapsed since the death of the testator, and nearly 17 years since the decree of the court, the real estate remains unsold. The neglect of the predecessors of the present trustee to sell cannot be imputed to him, but it cannot be questioned that during the 24 years of his administration he has had "a reasonable time" to obey the direction of the testator. If this neglect were the only ground on which the removal of the trustee is sought, the court, in the exercise of its discretion, would not find it difficult, in view of the unquestioned integrity of the trustee and of the facts set up in his answer, to excuse the neglect, and permit him to continue to exercise his trust. But a more serious question

is presented, arising out of the making of the leases or contracts referred to, which render it impossible, while they exist, to execute the trust in accordance with the direction of the testator. Caroline McArthur, the last of the beneficiaries who were entitled to an annuity from the trust, died on October 16, 1885, and the children of the testator's daughters thereupon became, in accordance with the provisions of the will, entitled to the principal. Although it may be gravely doubted whether the trustee at any time prior to that event could make the leases or contracts in question, I think it cannot be controverted that thereafter the execution of these leases or contracts by the trustee was clearly in excess of his power. The time fixed by the testator for the final distribution of the trust estate had then arrived, and the only power remaining in the trustee was to sell the real estate, and distribute the proceeds. Notwithstanding this fact, the trustee thereafter made the two leases or contracts mentioned; one to continue for the period of 20 years, the other to continue "as long as oil, gas, or other minerals are found in paying quantities upon said premises."

Newcomb v. Ketteltas, 19 Barb. 608, Hedges v. Riker, 5 Johns. Ch. 163, and other cases are cited by the learned counsel for the respondent in support of his contention that the trustee had power to make these leases or contracts. While it may well be doubted whether the doctrine of those cases is the present law (In re Mc-Caffrey, 50 Hun, 371, 3 N. Y. Supp. 96; Gomez v. Gomez, 81 Hun, 566, 31 N. Y. Supp. 206), it is sufficient to say in respect to them that in all those cases the period fixed for the termination of the trust had not arrived when the leases were made, and, furthermore, the leasing was there necessary to effectuate the intention of the makers of the trust, or was in pursuance of express authority. Here the time fixed by the testator for the sale of the real estate had long since expired. The time had arrived when these petitioners were entitled to the fund, and when the trust, according to the directions of the testator, should cease. According to the plain provisions of the trust, no power then resided in the trustee except to sell the property and distribute the proceeds. But the respondent's counsel maintains that the contracts made by the trustee were not, technically, leases, but were licenses or grants of incorporeal hereditaments. While I think that he is technically correct, it seems to me to be wholly immaterial. The petitioners had a right to a sale of the real estate free from incumbrance, and to the proceeds. That right was the measure of the trustee's power and duty. He had no more power to impose upon the real estate the burden of these easements, one for 20 years, and the other of indefinite duration, than he had to lease the premises for the same period of time. The one was as much in excess of his power as the other.

The answer of the defendant that the acts complained of have greatly benefited the trust estate furnishes no excuse. A trustee cannot be permitted to substitute his judgment for that of the creator of the trust, however much more beneficial it may be to the trust estate. It is the will of the testator, and not of the trustee, which is to be executed. There has been no such acquiescence of the peti-

tioners in the acts of the trustee as will, within the rule of law, debar them from relief.

For his breach of duty, should the trustee be removed? As I have said, there can be no question that in making the leases or contracts he acted honestly, under a misapprehension of law, and with the sole purpose of benefiting the estate. Under these circumstances his removal is not any reflection upon his capacity or integrity. Quackenboss v. Southwick, 41 N. Y. 122; In re Morgan, 63 Barb. 621; In re Wolfe, 2 N. Y. Supp. 248. Although a trustee will not be removed for every violation of duty, or even breach of trust, yet, if his continuance in the trust would be prejudicial to the interests of the beneficiaries, or the breach is of such a character as to probably impede him in its future management, and especially where the beneficiaries are of mature years and judgment, and desire a removal, there should be a new appointment. In re Wolfe, 2 N. Y. Supp. 248, was a proceeding to remove a trustee. The petitioner disclaimed any charge against the moral character of the trustee or against his responsibility. A lease had been made by the predecessor of the trustee, which the petitioner claimed to be improvident. She desired an action to be brought to set it aside, and the trustee did not think it best to do so. The court said:

"Now, this trust is solely for the petitioner's benefit. No one else has any interest in it. She is a married woman, old enough to have some judgment as to her own interests. If another trustee be appointed, he will not enter on any litigation without careful advice. But he may be more ready to consider the wishes of the petitioner. It seems to me just, therefore, that she should have the trustee whom she desires, supposing him to be a suitable person; and this without casting blame on the present trustee. Quackenboss v. Southwick, 41 N. Y. 117; In re Morgan, 63 Barb. 621."

Here the petitioners have a right to have an action brought by the trustee to set aside the leases or contracts affecting the real estate, so that it may be sold by the trustee free from the burdens which have been illegally imposed upon it. If the present trustee could be induced to bring such an action, his situation would not be free from embarrassment, by reason of his having made the leases. I think the petitioners are entitled to a trustee who, in any litigation which might be instituted to have the leases or contracts adjudged invalid, would not be impeded in the performance of his duty, and who will act in harmony with the beneficiaries of the trust. The petitioners constitute 22 of the 30 persons who are interested in the estate, and some of the remaining 8 appear by counsel, and unite in the application for relief. They are persons of full age, capable of understanding their interests and managing their affairs; and I think it proper that they should have a trustee in harmony with them, to bring, if desired, the proper actions to have the leases or contracts complained of set aside, and to close the estate with all convenient speed in accordance with the instructions of the testator. The application of the petitioners should be granted.

Ordered accordingly.