◼ IRENE FRYDEL KIM, Respondent-Appellant, et al., Plaintiffs, v ROSS P. SOLOMON et al., Appellants-Respondents. [18 NYS3d 13]—

Order, Supreme Court, Bronx County (John A. Barone, J.), entered November 25, 2014, which denied defendants commissions, denied their request that plaintiff Irene Frydel Kim pay a surcharge or submit an accounting, ordered them to return certain funds to the Amato 2004 Family Trust (Family Trust), removed them as trustees of the Family Trust and Amato Residence Trust, implicitly denied their request that the Family Trust reimburse the estate for overpayment of certain sale proceeds, awarded certain attorneys' fees, and implicitly denied Irene attorneys' fees, unanimously modified, on the law, the facts and in the exercise of discretion, to order the Family Trust to reimburse the Amato estate $15,284.37 for the overpayment of the fractional share, direct defendant Frank Szymanski to repay an additional $8,474 to the Family Trust, remand for further proceedings on trial counsel Corsa's attorneys' fees, and otherwise affirmed, without costs.

The court providently exercised its discretion in denying de-

fendants a commission because their conduct at times harmed the trust, while benefitting themselves (*Matter of Gregory Stewart Trust*, 109 AD3d 755 [1st Dept 2013]). Furthermore, in light of the defendants' conflict and resulting conduct, the court properly removed them as trustees (*see Matter of Hall*, 275 AD2d 979, 980 [4th Dept 2000]; *see also Pyle v Pyle*, 137 AD 568, 572 [1st Dept 1910], *affd* 199 NY 538 [1910]).

As the court noted, defendants transferred $151,250.66 from the Family Trust, of which they were trustees and Irene the beneficiary, to Anthony's estate, of which they were beneficiaries, without adequate justification, thus harming the Family Trust and benefitting themselves. Defendants assert that the transactions were repayments of "loans" Anthony made to the Family Trust to maintain the King Avenue home, the primary asset in the Family Trust; however, they failed to adequately explain why Anthony, who continued to live in the King Avenue home and was previously paying such expenses outright, should abruptly loan the expenses to the Family Trust, only after defendants became trustees of the Family Trust and eventually, beneficiaries of his will. They also failed to explain why such "loans" were necessary when other funds, including Anthony's rent payments, were available to cover at least part of those expenses. Accordingly, the court properly ordered defendants to repay the $151,250.66 to the Family Trust.

In addition, trust documents require defendants, as trustees, to obtain the beneficiary Irene's consent before they may directly hire and compensate themselves, such as for legal and bookkeeping services. Accordingly, Szymanski must repay $8,474, paid to himself for his cleaning and bookkeeping services without Irene's consent, to the Family Trust.

Next, the court correctly concluded that monthly payments of $3,000 from Anthony to Irene were not loans, nor was there any reason to require Irene to repay any part of those payments. Neither the trust documents nor any other part of the record suggests that those payments were to Irene in her capacity as trustee, rather than as ongoing payments to compensate Irene and her husband John Kim for leaving their Vermont home, and moving to King Avenue to care for Anthony's ailing wife, Sally, and to supplement their minimal salaries earned in helping Anthony run his business, the Amato Opera.

Next, as Irene concedes, the court correctly concluded that her refusal to promptly vacate the King Avenue home, resulting in prolonged Housing Court litigation, warrants her payment of the Family Trust's counsel Lorraine Corsa's legal fees in connection with that litigation. However, contrary to Irene's

further assertions in her cross appeal, the Supreme Court proceedings were also clearly impacted by that conduct, as the parties litigated extensively regarding the maintenance and sale of the home while Irene remained there. The court also correctly noted defendants also complicated the Supreme Court litigation due to their conflict and self-dealing (*see e.g. Matter of Dana [Manufacturers Hanover Trust Co.]*, 45 AD2d 676, 676 [1st Dept 1974]). Thus, the court correctly concluded that both sides must pay Corsa's outstanding legal fees.

Defendants appear to be correct that the $151,250.66 that the court ordered defendants return to the Family Trust includes payment of Corsa's fees for the Housing Court proceedings, meaning defendants will have incurred the cost of those fees, rather than Irene, as the court had correctly ordered. While defendants assert that they paid $59,244.81 in fees within that amount, their citations to the record demonstrate only that they paid $39,244.81, and it is unclear whether Anthony's estate or the Family Trust paid the further $20,000 in fees. Accordingly, the case should be remanded to determine what portion of Corsa's bill is encompassed in the $151,250.66 figure, what portion represents the Housing Court proceedings, which Irene should bear completely. The remaining unpaid outstanding amount, to the extent that it represents only Corsa's work in the Supreme Court, should be divided between Anthony's estate and the Family Trust, as the court ordered.

The court properly awarded $10,000 from the Family Trust to defendant Solomon in legal fees, and contrary to defendants' contentions, he is not entitled to more, as Corsa handled the bulk of litigation.

As Irene's conduct in remaining in the King Avenue home also impacted issues in the Supreme Court action, she is not entitled to payment of her legal fees in this action, as sought in her cross appeal.

Finally, defendants are correct that the Family Trust owes the estate an overpayment of $15,284.37 in the fractional share of sale proceeds of a building. Szymanski testified that in making the original payment, he neglected to apply a 25% discount authorized in the relevant legal memoranda. Irene's speculation that Anthony wanted to bestow a greater sum to the Family Trust is unsupported by any written documents and belied by Anthony's conduct towards her, in seeking her eviction from her home and replacing her as trustee of the Family Trust and beneficiary of his will by the time the payment was made. Concur—Tom, J.P., Acosta, Richter and Kapnick, JJ.